IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES K. GOLDSMITH,

        Plaintiff,                    No. 2:10-cv-1995 KJM EFB P

    vs.

L. DAVIS, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

                                  /

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  He sues defendants Teachout, Davis, Herrera, and Schiller for violations of his Eighth Amendment rights, based on allegations that Teachout was deliberately indifferent to his serious medical needs, and that Davis, Herrera, and Schiller used excessive force.  Defendants move for summary judgment.  Dckt. No. 37.  For the reasons explained below, it is recommended that the motion be granted.

**I.    The Complaint**

       This action proceeds on the verified complaint filed July 27, 2010.  Dckt. No. 1.  His claims are predicated on events that allegedly occurred no two different dates.  His claim against Teachout arises from events that allegedly occurred on July 27, 2009.  Plaintiff's claim against Davis, Herrera, and Schiller arises from events that allegedly occurred on August 14, 2009.

1

Plaintiff alleges that on July 27, 2009, he fell down a flight of stairs and needed to see a doctor. *Id.* ¶ 26. He claims that Teachout denied him medical treatment and stated that plaintiff had already been seen by a doctor, and that unless plaintiff was dying, he would not be seen by a doctor until the following day. *Id.* ¶¶ 26-27. Plaintiff claims that he was in a great deal of pain and that the right side of his body was constantly jerking. *Id.* ¶ 27. He also claims that there was limited movement in his right leg, that he had a headache, and that he was seeing spots. *Id.*

On August 14, 2009, plaintiff was allegedly seen by his primary care provider for complaints of pain. *Id.* ¶ 15. According to plaintiff, he could barely move. *Id.* At the conclusion of the examination, Davis allegedly offered to help plaintiff, but plaintiff refused his assistance. *Id.* Plaintiff claims that Davis then grabbed his arm, while Herrera grabbed his waist, and Schiller grabbed his feet. *Id.* The three defendants then allegedly "slammed" plaintiff onto the floor, where they "continued their assault," by flipping plaintiff over face down, and placing him in mechanical restraints that were too tight, causing plaintiff severe pain. *Id.* ¶¶ 16-17. Then, they allegedly "threw" plaintiff in a wheelchair and pushed him into a "milk crate and blood pressure machine." *Id.* ¶ 20. In doing so, plaintiff apparently hit his foot, which caused excruciating pain to shoot up his right leg and lower back. *Id.* Plaintiff claims defendants were laughing when this happened. *Id.* Further, defendants allegedly told plaintiff to "shut the fuck up and when he's told to leave the doctor's office he better leave." *Id.* ¶ 18.

As discussed below, the factual assertion in plaintiff's complaint vary from the account provided in his deposition testimony, and in a sworn statement filed with his opposition

**II.      Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600

(1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

4

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.   Discussion**

    **A.   Deliberate Indifference to Medical Needs**

Defendants seek summary judgment on plaintiff's claim that Teachout was deliberately indifferent to plaintiff's serious medical needs. To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant

injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is insufficient, by itself, to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Rather, the plaintiff must show that the course chosen by the defendant was medically unacceptable under the circumstances and that the defendant was aware of the risk posed by the chosen course. *Id.*; *Farmer*, 511 U.S. at 840. When a prisoner alleges a delay in medical treatment, he must show that the delay caused an injury. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

////

////

6

support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Defendants draw from plaintiff's deposition testimony and medical records to recount the events involving plaintiff and Teachout on July 27, 2009. On that day, plaintiff returned to CSP-Sacramento after undergoing a liver biopsy at the California Medical Facility (CMF). Dckt. No. 37-4, Ex. A ("Pl.'s Dep.") at 9:24-10:5, 11:21-23. After the liver biopsy, plaintiff fell while walking down stairs at CMF. *Id.* at 9:24-10:5. Plaintiff was examined by a doctor at CMF, where plaintiff complained of pain in his right leg and right elbow. *Id.* at 11:24-12:15; Dckt. No. 37-4, Ex. G ("Barnett Decl."), Exs. 4-5.[1] Plaintiff was transported back to CSP-Sacramento on the same day. Pl.'s Dep. at 13:11-14.

Upon plaintiff's arrival at CSP-Sacramento, Lieutenant Conrad called plaintiff into his office. *Id.* at 9:24-10:14. Plaintiff complained to Lieutenant Conrad of sharp pains in his right leg. *Id.* at 15:24-16:3. Lieutenant Conrad informed plaintiff that correctional staff at CMF had instructed him to conduct a video interview of plaintiff and to provide plaintiff with medical treatment. *Id.* at 9:24-11:8, 14:25-15:17. After completing a video interview of plaintiff, Lieutenant Conrad called defendant Teachout (a licensed vocational nurse) to his office. *Id.* at 9:24-11:10, 16:9-12; Dckt. No. 37-4, Ex. E ("Teachout Decl.") ¶ 2. Lieutenant Conrad informed Teachout that plaintiff had fallen down some stairs and needed some medical attention. Pl.'s Dep. 16:13-16; 22-61-13.

Teachout submits a sworn declaration, stating that as a licensed vocational nurse, her duties consisted of dispensing medication to inmates, making handwritten notes of any

---

[1] Despite this deposition testimony and supporting medical records, plaintiff states in his opposition brief that "[t]here was no medical examination performed after Plaintiff fell down the stairs at CMF on July 27, 2009." Dckt. No. 43 at 4. This unsworn allegation will be disregarded. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

7

observable injuries to inmates or correctional staff, and relaying inmates' requests for medical care to the medical department. Teachout Decl. ¶ 4.[2] She claims that during her conversation with plaintiff on July 27, 2009, she did not observe any physical injuries, plaintiff did not appear to be at any risk of substantial harm, and she did not believe that plaintiff faced a substantial risk of serious harm. *Id.* ¶¶ 6, 8. Nevertheless, she claims that in response to plaintiff's request for medical attention, she immediately called the registered nurse on duty. *Id.* ¶ 7. The registered nurse apparently informed Teachout that because plaintiff's medical records indicated that a CMF doctor had examined plaintiff earlier in the day, a CSP-Sacramento doctor would not examine plaintiff until the next day. *Id.* ¶ 10. Plaintiff's medical records show that he was seen by a doctor the following day and offered pain medication. Barnett Decl., Exs. 7-10. As a licensed vocational nurse, Teachout states that all she could do to ensure that plaintiff received medical attention was to inform the registered nurse on duty of plaintiff's request for medical care. *Id.* ¶ 9.

Defendants also submit the declaration of B. Barnett, M.D., who is employed by the California Correctional Health Care Serves as Chief Medical Officer for the Receiver's Office of Legal Affairs. Barnett Decl. ¶ 1. It is Barnett's professional opinion, based upon his review of plaintiff's medical records, and his training and experience, that plaintiff did not suffer any injury as a result of not being examined by a doctor at CSP-Sacramento on July 27, 2009. *Id.* ¶ 8. He also notes that the medical personnel who examined plaintiff on July 27, 2009 did not report any serious injuries, and that the medical records indicate that plaintiff was clinically stable and without distress, following his fall on July 27, 2009. *Id.* ¶ 7; *see also id.* ¶ 6 (opining that the pain medication offered to plaintiff on July 28, 2009, less than 24 hours after the fall, appears to have been administered as part of a program to treat plaintiff's chronic pain).

---

[2] Though not expressly stated in the Teachout Declaration, defendants' Statement of Undisputed Fact No. 14 relies on it for the assertion that "As an LVN, Teachout was not qualified to medically examine inmates." Dckt. No. 37-3.

Teachout argues she is entitled to summary judgment because she was unaware that plaintiff faced a substantial risk of serious harm and because plaintiff did not suffer any injury. While plaintiff may dispute those facts, he fails to refute Teachout's declaration testimony on these points with any admissible evidence. First, plaintiff suggests that Teachout did not actually believe that he was hurt. *See* Dckt. No. 43 at 4. However, success on plaintiff's claim requires a showing that Teachout deliberately disregarded a known risk of harm to plaintiff. *See Toguchi*, 391 F.3d at 1057 ("the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"). If, as plaintiff insists, Teachout did not believe that plaintiff was hurt, she could not have acted with a sufficiently culpable state of mind (absent obvious and serious symptoms). *See Farmer*, 511 U.S. at 842-43 & n.8 (whether a prison official had the requisite knowledge of a substantial risk may be shown through the "fact that the risk was obvious" and the prison official may be liable if "he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist"). Plaintiff presents no evidence upon which a reasonable jury could conclude that Teachout deliberately disregarded a known risk of harm to plaintiff. Nor does plaintiff present evidence upon which a reasonable fact finder could conclude that plaintiff exhibited obvious and serious symptoms during his interaction with Teachout such that Teachout "refused to verify underlying facts that [s]he strongly suspected to be true, or declined to confirm inferences of risk that [s]he strongly suspected to exist." *Id*. Plaintiff's general contention that he informed Teachout that he required "medical attention" for his "injuries" is not enough to create a triable dispute as to whether Teachout knew that plaintiff faced a substantial risk of serious harm. *See* Dckt. No. 43 at 4.

Next, plaintiff seizes on defendants' admission that as a licensed vocational nurse, Teachout was not qualified to medically examine inmates. Dckt. No. 43 at 3, 4, 6; *see also* Dckt. No. 37-3, No. 14. From this, plaintiff contends that Teachout was also "not qualified to determine whether or not Plaintiff was either injured or was at risk of substantial harm." Dckt.

9

No. 43 at 3. However, plaintiff may not discredit Teachout's account of what she personally observed (no injuries) and thought (no substantial risk of serious harm) during their interaction simply because her duties did not include conducting medical examinations. Regardless of her qualifications, plaintiff must demonstrate that a triable issue exists as to whether Teachout knowingly exposed plaintiff to a substantial risk of serious harm. *See Celotex*, 477 U.S. at 323 (moving party entitled to a judgment as a matter of law if nonmoving party would have the burden of proof at trial and fails to make a sufficient showing on an essential element of his case). Plaintiff's contention that he should have been examined by a qualified medical professional at CSP-Sacramento on July 27, 2009, is not sufficient to defeat defendants' motion. Although plaintiff was not seen by a doctor at CSP-Sacramento on July 27, 2009, he was seen by a doctor the following day. Plaintiff fails to demonstrate that he suffered harmful consequences as a result of this one-day delay. *See McGuckin*, 974 at 1061-62.

For these reasons, summary judgment must be entered in favor of Teachout.

**B.     Excessive Force**

Defendants seek summary adjudication of plaintiff's claim that Davis, Herrera, and Schiller applied excessive force on August 14, 2009. "When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7.

////

Defendants turn to plaintiff's deposition testimony to describe what happened on August 14, 2009. On that day, following a medical appointment, Davis offered to help plaintiff get off of the exam table, but plaintiff refused. Pl.'s Dep. at 30:3-31:2, 31:12-18, 41:15-42:7. Herrera, Schiller, and Davis (all CSP-Sacramento correctional officers) then grabbed plaintiff and lifted him off of the exam table. *Id.* at 42:8-43:12. As they lifted plaintiff, Herrera lost his grip on plaintiff's waist and plaintiff fell on his bottom on the floor. *Id.* at 43:13-44:5. After plaintiff fell to the floor, Herrera, Davis, and Schiller "flipped" plaintiff on his stomach, "roughly handcuff[ed]" him, and "threw" him into a wheelchair. *Id.* at 44:6-45:2.

Defendants Davis, Herrera, and Schiller argue that the force they used was *de minimis* at most, and that their conduct was not of the type that is repugnant to the conscience of mankind. *See Hudson*, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)). Defendants also state that they never intended to harm plaintiff and that they never acted out of anger, malice, or for any improper purpose. Dckt. No. 37-4, Ex. B (Davis Decl.) ¶¶ 4-5, Ex. C (Herrera Decl.) ¶¶ 4-5, Ex. D (Schiller Decl.) ¶¶ 4-5. In response, plaintiff again fails to present evidence sufficient to demonstrate the existence of a genuine dispute for trial.

Plaintiff's opposition brief repeats the allegation in his complaint that defendants "slammed" him to the floor. Dckt. No. 43 at 8. But at his deposition, and in a sworn statement filed with his opposition, plaintiff contradicts himself by admitting that he fell to the floor because Herrera lost his grip on plaintiff's waist. *See* Dckt. No. 43-1, No. 31. This detail is not only significant, it is material to the motion as to this claim. Though plaintiff characterizes defendants' subsequent conduct as "rough," this description of their specific conduct does not sufficiently demonstrate that the force they used was more than *de minimis*. *See Hart v. Celaya*, 548 F. Supp. 2d 789, 804 (N.D. Cal. 2008) (Eighth Amendment does not protect against *de*

11

1  *minimis* use of physical force, such as "rough handling"); *Hudson*, 503 U.S. at 9 (not every
2  "malevolent touch" by a prison guard is actionable as an Eighth Amendment violation).

3        Plaintiff's next contention, that defendants' use of force used was nevertheless excessive
4  because he was "under the[ir] control," is also unavailing. Dckt. No. 43 at 1. The sole fact that
5  the defendants took physical control of plaintiff does not create a triable issue as to whether their
6  use of force was wanton and unnecessary in violation of the Eighth Amendment. *See Rhodes v.*
7  *Chapman*, 452 U.S. 337, 346 (1981) (it is "the unnecessary and wanton infliction of pain," i.e.,
8  infliction of suffering that is "totally without penological justification," that violates the Eighth
9  Amendment). This is particularly true where, as here, plaintiff admits that defendants never
10 acted out of anger, malice, or for any improper purpose and that they never intended to harm
11 him. Dckt. No. 43-1, Nos. 35-36; *see also* Dckt. No. 43-2, No. 12 ("Plaintiff would agree that
12 during their interaction with Plaintiff on August 14, 2009, Defendants Herrera, Schiller, and
13 Davis never acted out of anger, malice, *or for any improper purpose*." (emphasis added)); *see*
14 *also* Dckt. No. 43 at 5 ("Plaintiff agrees that Defendants Herrera, Schiller, and Davis *did not*
15 *intend to harm him*." (emphasis added)).

16       Plaintiff also contends that "he was already experiencing excruciating pain" prior to his
17 interaction with defendants, and that when his leg was pushed into the milk crate, it caused more
18 "excruciating pain." Dckt. No. 43 at 9. As discussed, plaintiff has not shown that defendants
19 used more than *de minimis* force and admits that their actions were not done maliciously and
20 sadistically for the purpose of causing him harm. The mere fact that defendants' actions may
21 have caused plaintiff pain or exacerbated his existing pain does not demonstrate that their use of
22 force violated the Eighth Amendment. *See Shelton v. Chorley*, No. 1:07-cv-560 MHM, 2011
23 U.S. Dist. LEXIS 35053, at *19 (E.D. Cal. Mar. 31, 2011) (the fact that the plaintiff's
24 preexisting injuries were aggravated did not create a material issue of fact concerning the
25 reasonableness of the force applied).

26 ////

Lastly, plaintiff contends that defendants "laughed about [his] agony" when his foot hit the milk crate. *See* Dckt. No. 43 at 9. Plaintiff's guess as to why defendants were laughing, however, is speculative. Regardless, such evidence would not demonstrate that defendants intentionally pushed plaintiff's foot into the milk crate or that their prior interaction with plaintiff amounted to an excessive use of force in violation of the Eighth Amendment.

Because plaintiff acknowledges that defendants had no intent to harm him and fails to otherwise demonstrate a genuine dispute as to whether defendants' use of force violated the Eighth Amendment, he cannot prevail on his excessive force claim. Summary judgment must therefore be granted in favor of defendants Herrera, Davis, and Schiller.

## IV. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that defendants' November 13, 2012 motion for summary judgment (Dckt. No. 37) be granted, that judgment be entered in defendants' favor, and that the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 10, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE